THE PEOPLE *v.* MARIPOSA COMPANY, AND THE REAL ESTATE KNOWN AS "LAS MARIPOSAS ESTATE, OR FREMONT GRANT."

DESCRIPTION IN COMPLAINT OF LAND ASSESSED.—If the complaint, in an action to recover judgment for taxes assessed on land and improvements thereon, describes the land assessed by giving its name and metes and bounds less certain lots sold out of the same, without giving the location and boundaries of the lots sold, the complaint is fatally defective.

ACT LEGALIZING ASSESSMENTS.—The Act of 1866, passed for the purpose of legalizing defective assessments, did not legalize complaints, in actions then pending, which were defective by reason of not describing the land assessed.

POWER OF LEGISLATURE OVER PLEADINGS.—The Legislature has not the power to legalize existing pleadings substantially defective without first requiring them to be amended.

APPEAL from the District Court, Thirteenth Judicial District, Mariposa County.

The complaint started out as follows:

" The People of the State of California, by J. Burckhalter, District Attorney for the said County of Mariposa, complain of the Mariposa Company, a corporation created under the laws of the State of New York, and of the following real estate, less the town lots sold in Bear Valley and Mariposa, embracing about forty-three thousand acres, with improvements, as given in by Fred. Law Olmstead, Manager for said company. Said estate was formerly patented to John C. Fremont, by the Government of the United States, and more particularly described as follows, to wit:

" That certain tract or parcel of land lying and being in the County of Mariposa, and known as the ' Las Mariposas, or Fremont Grant,' and more particularly described as follows, to wit:"

Then followed a description of the "Las Mariposas," by metes and bounds. After the description, the complaint proceeded as follows:

"And for cause of action say, that between the first Monday in March, A. D. 1865, and the last Saturday in October, of

the same year, in the County of Mariposa, State of California, A. C. Kelly, then and there being County Assessor of said county, did duly assess and set down upon the assessment roll, all the property, real and personal, in said county, subject to taxation ; and that said assessment roll was afterward submitted to the Board of Equalization of said county, and was by said Board duly equalized as provided by law. That the said Mariposa Company being then and there the owner of, and that there was duly assessed to it, the above described real estate, (' excepting the town lots sold in Bear Valley and Mariposa,') improvements on said real estate ; and that upon said property there has been duly levied, for the fiscal year A. D. 1865, a State tax of thirty-one hundred and ninety-six dollars and sixty-five and one half cents, and a county tax of thirty-eight hundred and ninety-one dollars and fifty-eight and one half cents, amounting in the whole to seven thousand and eighty-eight dollars and twenty-four cents, all of which is due and unpaid. The whole amount of the seven thousand and eighty-eight dollars and twenty-three and one half cents was duly assessed and levied against the real estate aforesaid, and improvements thereon.

"Wherefore, said plaintiffs pray judgment against the said Mariposa Company, defendants herein, for the sum of seven thousand and eighty-eight dollars and twenty-three and one half cents, and for damages and costs, and separate judgment against the said real estate and improvements, for seven thousand and eighty-eight dollars and twenty-three and one half cents, and the damages and costs aforesaid ; and that the said lien be enforced, and that the said real estate and improvements be sold to satisfy such separate judgment, and that the interest and claim of the Mariposa Company aforesaid, defendant herein, and all persons claiming any interest in said real estate or improvements, be forever barred and foreclosed."

The defendants appealed from the judgment.
The other facts are stated in the opinion of the Court.

*J. B. Felton,* and *Theodore H. Hittell,* for Appellants, argued

that the description of real estate attempted to be subjected to sale was entirely insufficient, and that the tax was never properly assessed; and cited Hittell's Laws, Sec. 6,169; *People* v. *Pico*, 20 Cal. 595; and *Keane* v. *Cannovan*, 21 Cal. 291.

   *J. G. McCullough, Attorney-General,* for the People, argued that the real estate was sufficiently described, because first there was the common designation of " the real estate known as the Las Mariposas or Fremont Grant, less town lots sold," and then a further designation that the grant, less the town lots, embraced about forty-three thousand acres; and cited *People* v. *Rains*, 23 Cal. 133; *High* v. *Shoemaker*, 22 Cal. 370; and *People* v. *Leet*, 23 Cal. 163. He further argued that an insufficient description was cured by the Act of April 2d, 1866 (Laws of 1865–6, p. 795); and cited *People* v. *Frisbie*, 26 Cal. 139.

   *Hittell & Felton,* in reply, argued that the Act of April 2d, 1866, did not apply to this case, because the complaint in this case followed the assessment, and did not improve the description, and because this action was commenced before the passage of the Act.

   By the Court, SHAFTER, J. :

   This is an action to recover delinquent taxes. The suit is against the real estate and improvements, upon which the taxes are alleged to have been assessed, and *in personam* against the company to which the property is alleged to belong. Judgment was entered against the defendants by default.

   There is a number of grounds upon which it is claimed that the judgment should be reversed, but it will be necessary to consider but one of them. It is urged that the complaint is fatally defective for the reason that it cannot " be ascertained therefrom what land and improvements are intended." (Acts 1861, Sec. 40, p. 419.) The complaint

commences with a description of a larger tract, of which the tract alleged to be subject to the tax lien is put as a parcel. The larger tract is described as " Las Mariposas, or Fremont Grant, lying and being in the County of Mariposa;" and it is further described by metes and bounds. It is averred further that the land subject to the lien is the larger tract " less the town lots sold in Bear Valley and Mariposa," and the difference between the two quantities is laid at forty-three thousand acres—on which area the improvements affected by the decree are alleged to be situated.

The question of the sufficiency of the description is settled, as we consider, by the decision in *People* v. *Pico*, 20 Cal. 595. The land was described in the complaint in that action as " unsold portions of eleven leagues of land known as Los Mokelamos." The distinction between the two descriptions is merely verbal. In both there is a larger quantity stated and described with proper precision; in both an attempt is made to get at the taxed lands by taking from the larger tract a less quantity—described expressly in the case at bar as " sold," etc., and described in the case cited by the same idea, so to speak, expressed indirectly. The phrase " unsold portions of Los Mokelamos" is in effect a statement of the residue of the larger area, to be found by deducting therefrom the parcels that had been " sold." The distinction is between stating the difference between two quantities directly, and giving the quantities and leaving the difference to inquiry or calculation—a distinction more nominal than real.

In *People* v. *Pico* the quantity put as subtrahend may have fallen anywhere within the limits of " Los Mokelamos;" in this case, however, the quantity standing in that stead is somewhere within the limits of " Bear Valley " and " Mariposa," those localities being only part of " Las Mariposas." Although the smaller quantity is in this case confined within narrower limits than it was in the case cited, still no clue is given to its exact *situs* within those limits, and therefore its position in space can never be ascertained.

But it is claimed for the people that the defect in question

is cured by the Act of 1866, (Acts 1866, p. 795.)   But that Act was passed for the purpose of legalizing defective assessments, and not for the purpose of legalizing defective complaints in pending actions.   Further, while the one purpose is doubtless within the legislative reach, the other is as clearly beyond it.

Under the fortieth section of the Revenue Act of 1861, it is not necessary that the description of the lands, etc., in the complaint in a suit like the present, should follow the description given in the assessment roll, and we therefore have no means of knowing what that description is.   It may be good independently of the Act of 1866, or there may be no attempt at description, or, if one was attempted, it may be so unreal and illusory that no amount of legislative indorsement could give to it any available meaning—or none, at least, so far as proceedings *in rem* are concerned; or the description, though imperfect as a guide to the land intended to be assessed, may be one that cannot be helped out by averment under the Act of 1866, for the want of extrinsic facts capable of proof.   But, however that may be, it is apparent that the Act was not passed for the healing of defective pleadings in tax suits pending at its passage or to be brought thereafter.   It is well that Courts should have power to amend defective pleadings, but it would be of dangerous consequence if the Legislature, having the power, should legalize existing pleadings, substantially defective, without first requiring them to be amended; and should a prospective operation also be given to such an Act, all pleadings would be abolished in effect, and the only documents necessary to a final roll would be a verdict and judgment.   And they even might be dropped out by carrying the maxim of *ut res magis valeat quam pereat* a step further— nothing being made necessary to a transfer of property *in invitum* but an execution and officer's return thereon.

The judgment is reversed and cause remanded, with leave to plaintiffs to amend complaint.