AUDITOR GENERAL v. FLEMING.

1. TAXATION — CANCELLATION OF ASSESSMENT — INSUFFICIENT DESCRIPTION—REASSESSMENT.

Boards of supervisors are not authorized, in reassessing taxes, to correct descriptions absolutely void for indefiniteness, but in such cases they can only reassess the taxes upon the taxable property of the proper township.

2. SAME—ERRONEOUS REJECTION BY AUDITOR GENERAL.

Where the description under which land was assessed was sufficient, but the auditor general erroneously canceled the tax, the board of supervisors properly reassessed it on the same land.

3. SAME—DESCRIPTION—SUFFICIENCY.

An assessment against a lot as on "Newell's E. & C. Plat" is

sufficient, there being but one plat of the village in use and that being recorded as "Newell's Enlarged and Corrected Plat."

4. SAME—REASSESSMENT—RESOLUTION OF SUPERVISORS — SUFFICI-ENCY.

By adopting the report of its committee on apportionment and rejected taxes, which has recommended the reassessment of certain taxes in accordance with schedules, previously prepared and submitted by the county treasurer, the board of supervisors makes the report and schedules a part of its resolution, and makes a valid reassessment without setting the report out at length in its resolution.

Appeal from Muskegon; Russell, J. Submitted October 11, 1905. (Docket No. 31.) Decided November 21, 1905.

Petition by Perry F. Powers, auditor general, for the sale of land delinquent for taxes: On objections filed by R. Andrew Fleming. From a decree for petitioner, contestant appeals. Affirmed.

The contestant and appellant was the owner of a mortgage covering the land involved in this controversy. For the years 1899 and 1900 the land was assessed under the following description:

"Lot 5 and N. 12 feet of lot 6 of subdivision of lot 1, and E. one-half of lot 2, block 20, Newell's E. & C. Plat."

The contestant applied to the auditor general to have the taxes upon this property set aside for misdescription. The auditor general complied with his application. By resolution of the board of supervisors, the taxes for these two years were reassessed under the following description:

"Lot 5 and the N. 12 feet of lot 6 of subdivision of lot 1, and the E. one-half of lot 2, in block 20, Newell's Enlarged and Corrected Map of the City of Muskegon."

The original plat, filed in 1849, was entitled "Village Map of Muskegon, Theodore Newell, Proprietor." In 1867 another plat was filed and recorded, entitled "New-

ell's Enlarged and Corrected Map of Muskegon Village."
The latter plat included all land that was in the original
and some besides.    The contestant insists that, under the
tax law, taxes set aside on account of misdescription of
the land cannot be reassessed.    The court sustained the
validity of the tax.    The law bearing upon the question is
as follows:

"If the auditor general shall discover before the sale of
any lands, as aforesaid, that for any reason they should
not be sold, he shall cause the same to be withheld from
the sale; and if the error originated with the township or
county officers, the amount of such taxes shall be charged
against the county from which the same was returned.
If such error was made by a township officer, the amount
thereof shall be charged by the county treasurer to the
township in which such error occurred.    If there has been
a change in the boundaries of any county or town in which
the lands are situated after the return of such taxes, such
rejected taxes shall be charged to the county to which the
lands belong at the time of such rejection."    Section 3918,
1 Comp. Laws.

"The auditor general shall prepare and forward to the
county treasurer a statement of such rejected taxes, and a
description of the lands upon which the same were as-
sessed; and such county treasurer shall lay the same be-
fore the board of supervisors at their next session there-
after, and if such taxes shall have been rejected or charged
back by the auditor general, except for the reason that
such land was not subject to taxation at the time of the
assessment for such taxes, or that the taxes thereon had
been paid, or that there had been a double assessment
thereof, the board of supervisors shall cause the same to
be reassessed upon the same land, and collected with the
taxes of the then current year, and in the same manner.
If such taxes cannot be properly reassessed upon the same
lands, the board of supervisors shall cause the same to be
reassessed upon the taxable property of the proper town-
ship."    Section 3919, 1 Comp. Laws.

*George S. Lovelace*, Prosecuting Attorney (*Cross,
Lovelace & Ross*, of counsel), for petitioner.

*Nims, Hoyt, Erwin, Sessions & Vanderwerp*, for
contestant.

GRANT, J. (*after stating the facts*).  The contestant's contention is:

1. That taxes rejected by the auditor general for erroneous or indefinite description cannot be reassessed upon a different description than that contained in the original assessment roll.

2. That the taxes in this case were assessed upon a different description of land than that contained in the original assessment.

3. That the board of review is the only body clothed with power to review the roll and correct errors in the description of property.

We are of opinion that proposition No. 1 is sound, and should be applied where the description is too indefinite for correction; in other words, the statute does not authorize boards of supervisors in reassessing taxes to correct descriptions absolutely void for indefiniteness, but only authorizes the board in such cases to reassess the taxes upon the taxable property of the proper township.  *Auditor General* v. *Smith*, 125 Mich. 576.  The original assessment in that case was of "the center 22 feet" of a certain lot.  The auditor general held the assessment void for indefiniteness and canceled it.  It was reassessed as "the easterly 22½ feet of westerly 44½ feet of lot 2," etc.  The reassessment was held void, the court saying that no one could tell whether the center 22 feet of the lot, running east and west or north and south, was intended.  It would seem to follow from that case that if the descriptions which were held void in *Jackson* v. *Sloman*, 117 Mich. 126, and *Petit* v. *Railroad Co.*, 114 Mich. 362, had been reassessed upon a description of land claimed to be the one intended to be assessed, such reassessment would have been held void.  Description of lands upon the assessment roll by abbreviation is held good.  *Auditor General* v. *Sparrow*, 116 Mich. 574; *State* v. *Mayor, etc., of Newark*, 36 N. J. Law, 288.  The proper test to be applied, as gathered from the authorities, is:  Is the description sufficiently definite to be identified by a competent person?  Justice Cooley, in his work on Taxation (2d Ed.), p. 407, says:

" A more satisfactory rule would seem to be that 'the designation of the land will be sufficient if it afford the means of identification, and do not positively mislead the owner,' or be calculated to mislead him."

Black says:

" A description into which such characters [abbreviations and figures] enter will be good and sufficient, provided they are familiar, easily understood, not misleading, and full enough to point out the particular land with certainty." Black on Tax Titles, § 114.

Tested by this rule, we think that the description on the tax rolls of 1899 and 1900 was sufficient. There is but one plat or map in the village of Muskegon. The second map included the descriptions the same as the first, except as to those that had been added. There was no other description upon the map or plat to correspond with that in this case. The abbreviations " E. & C." were well understood. It was impossible for anybody to have been mistaken as to what map or plat was referred to. An examination would easily locate the description of the property. We are therefore of the opinion that the description upon the tax rolls of 1899 and 1900 was valid, and that the cancellation by the auditor general was unauthorized. This being so, we think that a reassessment by the board of supervisors is valid.

2. The validity of the tax is attacked because the reassessment is not included in the resolution of the board of supervisors and the resolution does not contain the description of the land. Counsel cite *Gage* v. *City of Saginaw*, 128 Mich. 682. In that case an examination of the record shows that no resolution was passed which either directly or indirectly included the plaintiff's land. In the present case, as required by statute, the county treasurer duly made his report to the board. The board directed the county treasurer to separate and tabulate the rejected taxes into schedules for the several townships and municipalities. These schedules and the original list were referred by the board to its committee on apportionment

and rejected taxes. That committee reported the facts, and recommended the reassessment of this among other lands, referring to them by schedule. The report was adopted by the board. We think this constituted a valid reassessment. A reference to a report and adopting it makes it a part of the proceedings of the council, and it is not necessary that it should be written out at length upon the records.

Judgment affirmed.

MOORE, C. J., and McALVAY, BLAIR, and OSTRANDER, JJ., concurred.