AUDITOR GENERAL *v.* TUTTLE.

1. TAXATION—REJECTED TAXES—REASSESSMENT. ·
   Where a drain tax was rejected by the auditor general on account of indefinite description of the drain for which the tax was assessed, and returned to the county treasurer for reassessment, under section 3919, 1 Comp. Laws, and the only record of the board of supervisors claimed to refer to the tax is contained in the report of the committee on apportionment, which, under the heading of the township in which the land is situated, has an item "Ret. drain____$1,078.00," which is the amount of the tax, no authority to the supervisor to reassess the tax against any particular description of land in the township appears.

2. SAME—AUTHORITY TO REASSESS.
   Under section 3919, 1 Comp. Laws, authority to reassess rejected taxes against the same lands must be given by the board of supervisors.

Appeal from Eaton; Smith, J. Submitted June 19, 1906. (Docket No. 32.) Decided October 1, 1906.

Petition by James B. Bradley, auditor general, for the sale of land delinquent for taxes: On objections filed by Willis H. Tuttle. From a decree for petitioner, contestant appeals. Reversed, and decree entered for contestant.

*Elmer N. Peters*, Prosecuting Attorney, for petitioner.

*Joseph B. Hendee (Charles D. Thompson*, of counsel), for contestant.

McALVAY, J. Certain lands belonging to contestant were included in the proceedings of the auditor general for the sale of lands situated in Eaton county for delinquent taxes for the year 1902. He filed his petition setting forth his objections as provided by law, and the mat-

ter was heard upon proofs taken before the court. The objections were overruled by the court, and a decree granted in favor of the State against the lands in question for the amount set opposite the descriptions in the tax record. The tax in dispute had been assessed against these lands for the year 1900, as a special drain tax. It was returned to the county treasurer of Eaton county as not paid. The lands were returned to the auditor general as delinquent for taxes. They were afterwards rejected by the auditor general on account of indefinite description of the drain for which the tax was assessed, and returned to the county treasurer for reassessment. They were reassessed against these lands by the supervisor of the township upon the tax roll of 1902.

It is claimed by contestant that no reassessment as provided by law was made; that the supervisor of the township in which such lands are situated received no authority from the board of supervisors to reassess the tax in question against his lands. This is the only question in the case. The statute relative to the reassessment of rejected lands provides:

" The auditor general shall prepare and forward to the county treasurer a statement of such rejected taxes, and a description of the lands upon which the same were assessed; and such county treasurer shall lay the same before the board of supervisors at their next session thereafter, and if such taxes shall have been rejected or charged back by the auditor general, except for the reason that such land was not subject to taxation at the time of assessment for such taxes, or that the taxes thereon had been paid, or that there had been a double assessment thereof, the board of supervisors shall cause the same to be reassessed upon the same land, and collected with the taxes of the then current year, and in the same manner. If such taxes cannot be properly reassessed upon the same lands, the board of supervisors shall cause the same to be reassessed upon the taxable property of the proper township." 1 Comp. Laws, § 3919.

This tax was rejected and charged back by the auditor general for a reason not within the exception of the sec-

tion quoted, and the duty devolved upon the board of supervisors to cause the same to be reassessed upon the same land. There is no record of the report of the county treasurer to the board of supervisors containing a statement of rejected taxes in the proceedings of the board for the year 1902, and the county clerk had no such statement in his office. Such a statement was produced from the files of the county treasurer's office, from which appeared the description of these lands, the amount of the W. P. & M. drain tax rejected and the reasons for the rejecting, "name indefinite." It was agreed (subject to the objection of petitioner that the record of the proceedings of the board was the evidence which should control the case) that the former treasurer, if produced, would testify that this statement was presented by him to the board of supervisors. The only record of the board of supervisors made at the October meeting, 1902, claimed as having any reference to the rejected taxes, is contained in the report of the committee on apportionment. That portion of this report affecting the township of Oneida, in which these lands are situated, together with the action of the board upon the entire report, is given:

"Town or City, Oneida.

| | |
|---|---:|
| State | $1,723 17 |
| County | 1,697 50 |
| Town or city | 400 00 |
| Highway, per cent., ⅛ | |
| School | 6,215 50 |
| County drain | 3,501 20 |
| Road and bridge | 900 00 |
| Ret. drain | 1,078 00 |
| Road scraper | 48 06 |
| Dog | 112 00 |

"Supervisor Andrews, for the committee on tax apportionment for the year 1902, made the above report.

"To the Honorable Board of Supervisors of Eaton County, Michigan:

"Your committee on apportionment respectfully submits the above and foregoing report of the apportionment of taxes to be assessed upon the taxable property of the

several townships and cities of the county of Eaton, State of Michigan, for the year 1902, less such amounts as may be deducted by the proper officers in fractional school districts, and in taxes for road scrapers and recommended that the several amounts under the different items following the names of the several townships and cities, be assessed upon the taxable property of said townships and cities of said county of Eaton in accordance with law.

"FRANK ANDREWS,
"M. E. MILLER,
"Committee."

"On motion of Supervisor Dwight Backus the report of the committee on apportionment was accepted and adopted and the recommendations concurred in."

The item in this tabulated statement which is claimed to be the tax in question is, "Ret. drain, $1078.00." This statement contains all the State, county, township, and other taxes apportioned to Oneida township. The recommendation of the committee, adopted and concurred in by the board, was "that the several amounts under the different items following the names of the several townships and cities be assessed upon the taxable property of said townships and cities of said county of Eaton in accordance with law." We cannot say that "Ret. drain" means rejected drain tax to be reassessed, without reading into this record something it does not contain, and if we could, in the absence of any descriptions upon which the rejected tax was to be reassessed we cannot hold that authority is given to reassess the tax against the lands of petitioner. Such construction would warrant us in saying that the supervisor was authorized to assess this amount against any description of land in the township he might choose. No specific drain or drainage district was designated in the report. The most that can be said as to this item from this record is that the supervisor was authorized to spread the amount upon his roll against all the taxable property in the township.

This case is distinguishable from the case of *Auditor General* v. *Fleming*, 142 Mich. 12. The report of the committee under consideration in that case, which was

adopted by the board of supervisors, referred to the lands· to be reassessed by schedules for the several townships and municipalities, which by the direction of the board were prepared by the county treasurer when he made his report, and which contained the descriptions of all the lands to be reassessed.

The court said:

" These schedules and the original list were referred by the board to its committee on apportionment and rejected taxes.    That committee reported the facts, and recommended.the reassessment of this among other lands, referring to them by schedule.    The report was adopted by the board.    We think this constituted a valid reassessment."

See, also, *Gage* v. *City of Saginaw*, 128 Mich. 682. The supervisor had no authority to make the reassessment .against the lands of contestant.    By the statute the authority to reassess rejected lands must be given by the. board of supervisors.    No such authority having been given, the reassessment of these taxes against the land of contestant was void.

The decree of the circuit court is reversed, and a decree will be entered in this court in accordance with this opinion in favor of contestant.

CARPENTER, C. J., and GRANT, MONTGOMERY, and OS-TRANDER, JJ., concurred.